UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------X

:
TERRY BAZEMORE,                                          :
                                                         :
                                Plaintiff,               :
                    -v-                                  :
                                                         :
THE CITY OF NEW YORK, BRONX                              :
COUNTY DISTRICT ATTORNEY'S                               :
OFFICE, ASSISTANT DISTRICT                               :
ATTORNEY TROY A. SMITH,                                  :
DETECTIVE MICHAEL J.                                     :
DEPAOLIS (Shield No. 5607),                              :
                                                         :
                                Defendants.              :
                                                         :
---------------------------------------------------------- X

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____             │
│ DATE FILED: April 12, 2016           │
└─────────────────────────────────────┘
```

12-cv-5088

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

Plaintiff Terry Bazemore was arrested, indicted, and tried on charges of murder, burglary, and conspiracy. After a jury trial in New York state court, plaintiff was acquitted of all charges. He now brings the instant action against the City of New York and one of the detectives in the case, alleging that the prosecution was malicious and violated his constitutional rights.

Before the Court is defendants' motion for summary judgment. Defendants argue that it is undisputed that the prosecutor—and not the defendant, Detective Michael Depaolis—initiated the criminal charges, requiring a dismissal of the malicious prosecution claim; they argue further that the undisputed facts unambiguously establish probable cause for plaintiff's prosecution. In opposition, plaintiff does not dispute the material facts. Rather, he principally focuses on what is ultimately an irrelevant issue concerning whether defendant Detective Depaolis

1

failed to properly Mirandize plaintiff prior to his making an initial post-arrest statement.  As plaintiff's opposition is insufficient to raise a triable issue, defendants' motion for summary judgment is GRANTED.

I.    RELEVANT FACTS

No material facts in this action are disputed.  The Court sets forth below only those facts that are relevant to the issues in this motion.

A.    The Murder

At around 10 p.m. on November 16, 2004, three men and one woman broke into the home of Levi Bernard, a nineteen-year old man.  Bernard was shot and killed.  (Defs.' Stmt. of Undisputed Facts Pursuant to Local Civ. R. 56.1 ("Defs.' 56.1") ¶¶ 1, 4.)

Subsequently, a woman named Latisha Lindsay reported to the police that she had met Bernard online, and that earlier in the day on November 16, 2004, she and Bernard had sexual intercourse.  (Defs.' 56.1 ¶¶ 6-7.)  She reported that after she returned home, she informed an acquaintance, Roy Gray, that she had been "played" by Bernard.  (Id. ¶ 9.)  Gray is plaintiff's brother.  Both men then went to Lindsay's apartment.  (Id. ¶10.)  Lindsay told police that she, Gray, plaintiff, and her cousin Darren Gunter went to Bernard's house together and forcibly entered the house, and the victim was then shot.  (Id. ¶¶ 11-13.)

Lindsay provided the police with descriptions of the three men and last known addresses for plaintiff and Gray.  (Defs.' 56.1 ¶¶ 14-16.)  She also identified plaintiff and Gray in photographs.  (Id. ¶¶ 17-18.)  All four individuals were arrested.  (Id. ¶¶ 19, 33, 41, 45.)

B.      Plaintiff's Arrest and Statements to Police

Plaintiff was arrested by defendant Detective Depaolis on April 29, 2005. (Pl.'s Stmt. of Undisputed Facts Pursuant to Local Civ. R. 56.1 ("Pl.'s 56.1") ¶ 3.)[1] Depaolis took plaintiff to the precinct, where he read plaintiff Miranda warnings that were incomplete.  (Id. ¶ 8.)  Plaintiff then made a written statement, in which he acknowledged entering the victim's home with Lindsay, Gray, and Gunter.  (Id. ¶ 6.)  Later in the afternoon, Detective Depaolis re-read written Miranda warnings to plaintiff.  (See Eaddy Decl. Ex. C, at 3-4.)  There is no dispute that these later, written Miranda warnings were complete.

Later that evening—and following the complete reading of Miranda warnings—plaintiff was interviewed by assistant district attorney ("ADA") Derek Lynton.  (Defs.' 56.1 ¶¶ 21-23; Eaddy Decl. Ex. C, at 5.)  In a videotaped statement, plaintiff admitted breaking into to Bernard's house with Lindsay, Gray, and Gunter in order to assault him after Lindsay had told the men that Bernard had raped her. (Id. ¶¶ 24-25.)[2]

At plaintiff's criminal trial, the judge suppressed his initial written statement based on the inadequate Miranda warnings, but denied the suppression motion as to the second, videotaped statement.  (Pl.'s 56.1 ¶¶ 8-10; Defs.' 56.1 ¶ 20, n. 4.)

C.      Corroborating Statements

Like plaintiff, Lindsay, Gray, and Gunter all gave statements to law

---

[1]      Plaintiff also testified at his suppression hearing that officers assaulted him after they entered his apartment in order to arrest him.  (Pl.'s 56.1 ¶ 11; Eaddy Decl. Ex. C, at 7.)

[2]      This statement was corroborated in full by Gunter's statement. (Defs.' 56.1 ¶¶ 35-36.)

enforcement.  (Defs.' 56.1 ¶¶ 20-21, 34, 42.)  Although the three men admitted that they forcibly entered Bernard's home with Lindsay prior to the shooting, plaintiff's statement was the only one that put himself outside of the house when the shooting occurred.  In his videotaped statement, plaintiff maintained that he left the home after he observed Gray produce a handgun and before any shots were fired.  (Id. ¶ 30.)  However, both Gunther and Gray's statements placed plaintiff inside the home during the shooting. (Id. ¶¶ 38, 44.)  In addition, Lindsay stated that plaintiff was outside the home <u>after</u> the shooting with a gun in his hands.  (Id. ¶ 13.)

According to Gunther's statement to the police, he saw Gray enter the bedroom that Bernard was in and heard one shot fired.  (Kuruvilla Decl., ECF No. 21, Ex. E; Defs.' 56.1 ¶ 38.)  He then saw plaintiff enter the bedroom and heard three additional shots.  Gunther then saw plaintiff leave the room with a gun. (Kuruvilla Decl. Ex. E.)  The group fled the house together but parted ways, and later, plaintiff told Gunther that he had shot Bernard three times, including twice in the chest.  (Id.; Defs.' 56.1 ¶¶ 38-40.)

Gray's statement, on the other hand, alleged that Gunther shot the victim first.  (Kuruvilla Decl. Ex. I.)  However, Gray admitted that he also fired a shot at Bernard after entering the bedroom with plaintiff.  He also stated that plaintiff was inside the bedroom when the shots were fired.  (Id.; Defs.' 56.1 ¶¶ 43-44.)

D.   <u>The Prosecution</u>

On April 29, 2005, the day after plaintiff gave a videotaped statement, Detective Depaolis signed a criminal court complaint charging plaintiff with second degree murder.  (Defs.' 56.1 ¶ 46.)  On May 5, 2015, a grand jury indicted plaintiff

for second degree murder, first degree manslaughter, first degree burglary, and conspiracy in the second and fourth degree.  (Id. ¶ 47.)

All four individuals were tried separately.  Both Gunter and Gray were convicted of second degree murder.  Lindsay was convicted of first degree burglary.  (Defs.' 56.1 ¶ 48.)  After a jury trial on July 1, 2009, plaintiff was acquitted on all charges.  (Id. ¶ 49.)

E.   This Lawsuit

On June 28, 2012, nearly three years after his acquittal, plaintiff filed this action against the City of New York, Detective Depaolis, the Bronx County District Attorney's Office, and Assistant District Attorney Troy Smith.  In his Complaint, plaintiff alleges a § 1983 claim for malicious prosecution as well as various state law claims.[3]

This action was transferred to the undersigned on November 13, 2015.  At a status conference on December 7, 2015, plaintiff voluntarily dismissed his state law claims.

On January 22, 2016, Detective Depaolis and the City of New York filed the instant motion for summary judgment. Defendants argue that plaintiff's claim against defendant Detective Depaolis fails as a matter of law because the grand jury's indictment, plaintiff's own confession, and statements of other participants in the crime demonstrate that probable cause existed for the prosecution.  Defendants also argue that, in the alternative, Detective Depaolis is entitled to qualified

---

[3]     Bronx County District Attorney's Office or Assistant District Attorney Troy Smith were never served and are therefore dismissed from this Court.

immunity.  Finally, defendants contend that because plaintiff has failed to raise a triable issue on the underlying constitutional violation, the <u>Monnell</u> claim which depends on such a violation, must also be dismissed.

## II.   LEGAL STANDARDS

### A.   <u>Summary Judgment</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  When the moving party does not bear the ultimate burden on a particular claim or issue, it need only make a showing that the non-moving party lacks evidence from which a reasonable jury could find in the non-moving party's favor at trial.  <u>Id.</u> at 322-23.

In making a determination on summary judgment, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor."  <u>Dickerson v. Napolitano</u>, 604 F.3d 732, 740 (2d Cir. 2010).  Once the moving party has discharged its burden, the opposing party must set out specific facts showing a genuine issue of material fact for trial.  <u>Wright v. Goord</u>, 554 F.3d 255, 266 (2d Cir. 2009).  "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist."  <u>Hicks v. Baines</u>, 593 F.3d 159, 166 (2d Cir. 2010) (internal citations

6

omitted).  In addition, "[o]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment."  <u>Porter v. Quarantillo</u>, 722 F.3d 94, 97 (2d Cir. 2013) (internal quotation marks and citation omitted).

      B.    <u>Malicious Prosecution</u>

      The elements of malicious prosecution claim "under § 1983 are substantially the same as the elements under New York law."  <u>Boyd v. City of New York</u>, 336 F.3d 72, 75 (2d Cir. 2003) (internal citations and quotation marks omitted).  Under New York law, a plaintiff alleging malicious prosecution must establish "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions."  <u>Manganiello v. City of New York</u>, 612 F.3d 149, 160-61 (2d Cir. 2010) (quoting <u>Murphy v. Lynn</u>, 118 F.3d 938, 947 (2d. Cir. 1997)).

      To "initiate" a criminal proceeding means more than "mere reporting of a crime to police and giving testimony."  <u>Manganiello</u>, 612 F.3d at 163.  Rather, a defendant must play "an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act."  <u>Rohman v. New York City Transit Auth. (NYCTA)</u>, 215 F.3d 208, 217 (2d Cir. 2000).

      In the malicious prosecution context, probable cause means "such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty."  <u>Boyd</u>, 336 F.3d at 76.  A grand jury's indictment creates a presumption of probable cause, which may be overcome by evidence that "the police witnesses 'have not made a complete and full statement of facts . . . that they have misrepresented

or falsified evidence . . . or otherwise acted in bad faith.'" Id. (quoting Colon v. City of New York, 455 N.E.2d 1248, 1250 (N.Y. 1983)).  Furthermore, "lack of probable cause generally creates an inference of malice." Manganiello, 612 F.3d at 163. Malice may also be proven by demonstrating that the prosecution "was undertaken from improper or wrongful motives, or in reckless disregard of the rights of the plaintiff." Id. (internal citation omitted).

III.   DISCUSSION

    A.    Malicious Prosecution Claims against Detective Depaolis

Plaintiff fails to proffer evidence supporting any of three key elements to a malicious prosecution claim: that probable cause was lacking, that defendant acted with actual malice, and that defendant initiated or continued the criminal charges.

    1.    Probable cause

Plaintiff has proffered no evidence to support lack of probable cause to charge him with the relevant crime. See Bermudez v. City of New York, 790 F.3d 368, 377 (2d Cir. 2015).

First, plaintiff does not dispute that Detective Depaolis had probable cause to arrest him.  He also proffers no facts suggesting that subsequent factual discovery undermined the existence of probable cause throughout the prosecution.  See Johnson v. Constantellis, 221 Fed. App'x. 48, 50 (2d Cir. 2007) ("If probable cause existed at the time of arrest, it continues to exist at the time of prosecution unless undermined by the discovery of some intervening fact.").

Second, plaintiff was indicted by a grand jury, which created a "presumption of probable cause that could only be overcome by evidence that the indictment was

the product of fraud, perjury, the suppression of evidence by the police, or other police conduct undertaken in bad faith." Bermudez, 790 F.3d at 377 (internal quotation marks omitted).  Plaintiff has failed to allege any evidence of this kind.

Instead, plaintiff argues that his initial written statement, which was obtained after improper Miranda warnings, overcomes the presumption of probable cause stemming from the grand jury indictment.  This is incorrect.  Grand juries may review and issue indictments based on evidence that would be excluded at trial, such as the suppressed written statement here.  See United States v. Calandra, 414 U.S. 338, 349-50 (1974).

Furthermore, plaintiff does not dispute that he gave a second, videotaped statement to the ADA several hours after the initial written statement and that he had been properly Mirandized before this videotaped statement.[4]

Plaintiff fails to proffer any evidence—and merely asserts—that the arresting officers' alleged conduct at the time of arrest led to coerced confessions in both the written and videotaped statements.  Although he alleges that the officers punched him in the stomach, plaintiff cannot connect that allegation to the elements of an involuntary confession.  In fact, he has failed to supply even a declaration alleging that his free will was "overborne at the time he confessed." Green v. Scully, 850 F.2d 894, 900 (2d Cir. 1988).  Plaintiff also appears to assume that a statement obtained after failure to administer Miranda warnings is equivalent to an involuntary confession.  That is incorrect.  See Oregon v. Elstad, 470 U.S. 298, 310,

---

[4]       Accordingly, plaintiff's argument that under New York law, a grand jury indictment may not be supported by uncorroborated testimony of accomplices is inapposite, because his own videotaped statement corroborated the statements of Lindsay, Gray, and Gunter.

105 S. Ct. 1285, 1293, 84 L. Ed. 2d 222 (1985) ("The failure of police to administer Miranda warnings does not mean that the statements received have actually been coerced, but only that courts will presume the privilege against compulsory self-incrimination has not been intelligently exercised.")

### 2. Actual malice

Because there is no genuine issue of material fact that plaintiff's prosecution lacked probable cause, there is also no inference of actual malice. See Manganiello, 612 F.3d at 163. Plaintiff has also failed to proffer any affirmative evidence that Detective Depaolis acted with actual malice—such as evidence of improper motive or reckless disregard of plaintiff's rights. Id., 612 F.3d at 163.

### 3. Initiation of proceedings

The Second Circuit has held that "police officers do not generally 'commence or continue' criminal proceedings against defendants," but that officers playing "an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act," may be liable for malicious prosecution. Bermudez v. City of New York, 790 F.3d 368, 377 (2d Cir. 2015). Because there is a presumption that prosecutors exercise independent judgment in deciding whether to pursue a prosecution, plaintiff must demonstrate that defendant "distorted the process by which plaintiff was brought to trial." Bailey v. City of New York, 79 F. Supp. 3d 424, 449 (E.D.N.Y. 2015); see also Townes v. City of New York, 176 F.3d 138, 147 (2d Cir. 1999). Prototypical examples of such distortion include providing false information to or pressuring a prosecutor. See Townes, 176 F.3d at 147. Plaintiff has failed to present any evidence of such misconduct. See Rohman, 215

10

F.3d at 217 ("One who does no more than disclose to a prosecutor all material information within his knowledge is not deemed to be the initiator of the proceeding."  (citing <u>Present v. Avon Products, Inc.</u>, 687 N.Y.S.2d 970, 971 (App. Div. 1999)).  Thus, plaintiff has failed to support required elements of the malicious prosecution claim.

### 4.  <u>Qualified immunity</u>

In any event, Detective Depaolis is also entitled to summary judgment on the malicious prosecution claim on qualified immunity grounds because, based on the record before the Court, no reasonable juror could conclude that his actions were "objectively unreasonable in light of clearly established law."  <u>Evans v. City of New York</u>, 123 F. App'x 433, 435 (2d Cir. 2005).

### B.   <u>Claims against the City of New York</u>

Because plaintiff has failed to assert a constitutional violation, there can be no municipal liability against the City of New York.  <u>See</u> <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury . . . the fact that the departmental regulations might have authorized the use of [unconstitutional conduct] is quite beside the point.");  <u>Martinez v. City of New York</u>, 340 F. App'x 700, 702 (2d Cir. 2009).

Furthermore, plaintiff has failed to allege a specific policy or practice of the City of New York that resulted in any constitutional violations.  <u>See</u> <u>Monnell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690 (1978).  Therefore, his claim against the City of New York fails as a matter of law.

C.      Claims against the Bronx County District Attorney's Office and ADA Smith

Plaintiff has apparently not served two of the defendants, the Bronx County District Attorney's Office and ADA Troy Smith.  Because the period for service under Fed. R. Civ. P. 4(m) has long passed, and because plaintiff failed to make a showing of good cause in his opposition papers, the claims against these defendants are DISMISSED.

IV.     CONCLUSION

The Court has considered plaintiff's other arguments and finds them to be without merit.  For the reasons set forth above, the Bronx County District Attorney's Office and Assistant District Attorney Troy Smith are DISMISSED as defendants in this action.  The City of New York and Detective Michael Depaolis's motion for summary judgment is GRANTED.  The Clerk of Court is directed to terminate the motions at ECF No. 18 and to terminate this action.

        SO ORDERED.

Dated:      New York, New York
            April 12, 2016

_____
        KATHERINE B. FORREST
        United States District Judge